IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUG 2 2 2007

**FILED**

ADMINISTRATIVE
COMMITTEE FOR THE
WAL-MART STORES, INC.
ASSOCIATES' HEALTH AND
WELFARE PLAN,

   Plaintiff,

v.

THERESA MARETTA and
STEVEN C. FUOCO, ESQ.,
AS A NOMINAL
STAKEHOLDER,

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

AUG 2 2 2007

JUDGE MATTHEW F. KENNELLY
UNITED STATES DISTRICT COURT

Case No.

07c 4748

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND, UPON NOTICE AND HEARING, PRELIMINARY INJUNCTION

  Plaintiff, the Administrative Committee ("Administrative Committee") of the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan (the "Plan"), submits this memorandum in support of its motion for a temporary restraining order, and upon notice and hearing, a preliminary injunction.

### INTRODUCTION

  This suit involves a dispute over the extent to which the Plan is entitled to reimbursement from an $18,661.13 settlement fund Defendant Theresa Maretta obtained from a third-party tortfeasor. The Plan is entitled to reimbursement in the amount of $14,401.38 of the $18,661.13 fund for the medical bills it paid on Defendant Theresa Maretta's behalf. Defendant Stephen C. Fuoco, Theresa Maretta's attorney, stated that he

was going to transfer $6,789.41 of the settlement (including $2,529.66 of the Plan's funds) into his personal account. Such misappropriation by Attorney Fuoco could cause irreparable harm to the Plan's claim under ERISA § 502(a)(3) asserted in this suit. Consequently, the Plan requests and the Court should grant a TRO and preliminary injunction under Rule 65 and/or ERISA § 502(a)(3)(A) to protect the disputed portion of the settlement fund.

## BACKGROUND

At all times relevant herein, Plaintiff Theresa Maretta was a "covered person" under the Wal-Mart Stores, Inc. Associates' Health and Welfare Plan. (Verified Complaint, at ¶ 7.)    On December 16, 2003, Theresa Maretta and Richard Maretta were injured in an auto accident.    (Ex. A, Release of Claims.) The Plan paid a total of $14,401.38 in medical benefits for injuries Theresa Maretta sustained in the accident. (Verified Complaint, at ¶ 9.) The Plan's terms provide that the Plan is entitled to "100% of the benefits paid" and establishes a "first priority" right if the participant recovers from a liable third-party. (Id. at ¶ 10.) The terms explain the participant must pay her own attorney's fees and even disclaims the common fund doctrine explicitly. (Id.)

Theresa Maretta and Richard Maretta filed suit in the Circuit Court of Cook County, Illinois, Law Division, against third-party tortfeasor Mark Lewis. (Ex. A, Release of Claims.) Attorney Steven C. Fuoco represents the Marettas in their suit against the third-party tortfeasor.

On July 20, 2007, Theresa Maretta settled her individual claim against Mark Lewis for $18,661.13. (Ex. A, Release of Claims.) On August 2, 2007, Attorney Fuoco filed a Petition to Adjudicate Asserted Medical Payment Liens ("Petition") in the lawsuit against the third-party tortfeasor. (Ex. B, Petition to Adjudicate Liens.) The Petition seeks to extinguish the Plan's claims for reimbursement for medical benefits paid on Theresa Maretta's behalf. (Id.)

On August 21, 2007, Attorney Fuoco and the Plan's counsel Malcolm B. Futhey III appeared before the Circuit Court of Cook County for a scheduling hearing regarding the Petition. At that time, Attorney Fuoco provided an affidavit stating he was entitled to a contingency fee of $6,789.41 from the $18,661.13 settlement fund. (Ex. C, Affidavit of Steven C. Fuoco.) Attorney Fuoco stated to Plan's counsel that he would place that day $6,789.41 into his own account and $11,871.72 pending resolution of the dispute.

The Plan's counsel informed Attorney Fuoco in person that the Plan claimed over $14,000.00 in reimbursement, and clarified in a later e-mail that the Plan's lien was for $14,401.38 (Ex. D, Email of August 21, 2007). Additionally, the Plan's counsel informed Attorney Fuoco in person and by e-mail that the Plan sought reimbursement for the full $14,401.38 without any reduction for his attorney's fee. (Id.) Further, the Plan's counsel stated in person and in e-mail that the $14,401.38 should be placed in the trust

3

account pursuant to Illinois Ethics Rule 1.15(c) until resolution of the dispute. (Id.)

Attorney Fuoco has shown no intent of diverging from his plan to deposit $6,789.41 into his account on August 21, 2007. Such a transfer constitutes a misappropriation of $2,529.66 (the result of $14,401.38 − $11,871.72) of the Plan's funds into Attorney's Fuoco's personal possession.

On August 22, 2007, the Plan filed this action under ERISA § 502 as well as this motion and memorandum for a temporary injunction to protect the disputed fund.

## ARGUMENTS AND AUTHORITIES

The Plan is entitled to a temporary restraining order ("TRO") and preliminary injunction under Rule 65 and/or ERISA § 502(a)(3)(A) to protect the disputed settlement fund created on August 21, 2007, a portion of which Attorney Fuoco has shown an intent to misappropriate, and potentially dissipate.

### A.   A TRO and preliminary injunction should issue under Rule 65

The Court should issue a TRO and, upon notice and hearing, a preliminary injunction pursuant to Rule 65. Rule 65 allows a court to issue temporary restraining orders and preliminary injunctions. FED. R. CIV. P. 65. "To win a preliminary injunction, a party must show that it is reasonably likely to succeed on the merits, it is suffering irreparable harm that outweighs any harm the nonmoving party will suffer if the injunction is granted, there is no adequate remedy at law, and an injunction would not harm the public interest. *Christian Legal Society v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006)(citing *Joelner v. Vill. of Wash. Park*, 378 F.3d 613, 619 (7th Cir. 2004)). The same

factors apply in a TRO analysis. *See, e.g., Protect Marriage Ill. V. Orr*, 458 F. Supp. 2d 562, 567-68 (N.D. Ill. 2006)(noting the standards for issuing temporary restraining orders are identical to the standards for preliminary injunctions). As shown below, the Plan's request satisfies all of these factors.

## 1. Probability of success on the merits

The Plan Defendants have a strong likelihood of success on the merits. As to the ERISA issues raised here, the Seventh Circuit has already acknowledged the Wal-Mart Plan's right to full recovery without a reduction for attorney's fees in a case nearly identical to this one. *Admin. Comm. Of the Wal-Mart Stores, Inc., Assocs. Health & Welfare Plan v. Varco*, 338 F.3d 680, 688-92 (7th Cir. 2003)(holding the Wal-Mart Plan's terms did not require it to pay any portion of participant's attorney's fees).

The Plan is more than just "reasonably likely" to succeed on the merits. The Plan has an extremely strong chance of success given *Varco*. Consequently, the Plan Defendants satisfy the factor concerning probability of success.

## 2. Threat of irreparable harm to the movant

The Plan Defendants will suffer an irreparable harm if a TRO and preliminary injunction are not issued. ERISA § 502(a)(3) allows a health plan to enjoin actions or obtain "other appropriate equitable relief" to enforce the terms of the plan. 29 U.S.C. § 1132(a)(3)(2007). The United States Supreme Court has construed the phrase "other appropriate equitable relief" to mean strictly and exclusively "those categories of relief that were *typically* available in equity." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255-56, 113 S. Ct. 2063, 124 L. Ed 2d 161 (1993)(emphasis in original); *accord Sereboff v. Mid Atl. Med. Servs.*, --- U.S. ---, 126 S. Ct. 1869, 1873-74, 164 L. Ed. 2d 612 (2006); *Great-*

*West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212-20, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002); *see also Dillard's Inc. v. Liberty Life Ins. Co. of Boston*, 456 F.3d 894, 901 (8th Cir. 2006). Equitable liens and constructive trusts are the only two types of equitable claims, and thereby the only claims, that have thus far been recognized as viable under § 502(a)(3). *See Sereboff*, --- U.S. ---, 126 S. Ct. 1869, 1875-77 (recognizing equitable lien claim as viable under § 502(a)(3)); *Knudson*, 534 U.S. at 213, 215-16 (noting constructive trust and equitable lien claims as viable under § 502(a)(3)). For both types of equitable claims, there must be a "specifically identifiable" fund. *Sereboff*, --- U.S. ---, 126 S. Ct. 1869, 1874; *see also Knudson*, 534 U.S. at 213, 216; *Dillard's, Inc.*, 456 F.3d at 901. If the fund has been dissipated, then no remedy is available under ERISA § 502(a)(3). *See Knudson*, 534 U.S. at 214.

This unique requirement of an identifiable fund under ERISA § 502(a)(3) causes an irreparable harm to occur once a party has dissipated the disputed fund. The only reported decision found analyzing the issue of irreparable harm in the context of an identifiable fund and an ERISA § 502(a)(3) claim concluded the threat of irreparable harm existed and granted a preliminary injunction. *Mank v. Green*, 297 F. Supp. 2d 297, 304 (D. Me. 2003); *see also Wellmark, Inc. v. Deguara*, 257 F. Supp. 2d 1209, 1211 (S.D. Iowa 2003)(noting in background that the plan had "persuaded the Court in light of the Supreme Court's decision in *Great-West Life & Annuity Insurance Company v. Knudson*, 534 U.S. 204, 151 L. Ed. 2d 635, 122 S. Ct. 708 (2002), that it would suffer irreparable harm if the proceeds were not identifiable"). In *Mank*, the health plan sued a participant under ERISA seeking reimbursement from an identifiable settlement fund. *Mank*, 297 F. Supp. 2d at 300. The health plan sought a preliminary injunction to protect

the identifiable fund. *Id.* at 299. The court granted the preliminary injunction. *Id.* at 305. In finding irreparable harm existed, the court distinguished mere "economic harm" and noted "once the identifiable proceeds in the [participant's] possession are dissipated, [the plan] no longer has an equitable right pursuant to ERISA to recover the funds from [the participant] personally." *Id.* at 304. Further, the court reasoned that the "purpose of a preliminary injunction is to maintain the status quo by preserving the viability of [the plan's] equitable right of recovery until a trial on the merits can finally resolve the dispute." *Id.*

Here, the Plan will suffer an irreparable harm to their § 502(a)(3) claim if the Court does not protect the identifiable fund. As shown above, the nature of the Plan's equitable action under ERISA § 502(a)(3) requires that an identifiable fund exist. Without such a fund, the ERISA § 502(a)(3) claim is not viable. And, as recognized in *Mank* (and *Deguara*), the threat of dissipating the disputed, identifiable fund constitutes an irreparable harm under a Rule 65 analysis. Consequently, the Court must protect the fund from any improper dissipation before the Court has had a chance to render a decision on the Plan's ERISA § 502(a)(3) claim.

Further, Attorney Fuoco has already demonstrated a willingness to disrupt the identifiable fund by unilaterally misappropriating $2,529.66. That amount is still identifiable in Attorney Fuoco's account since the transfer occurred on August 21, 2007. However, to prevent any further disruption, and very real risk of dissipation, of the $2,529.66 portion of the identifiable fund, the Court should direct Attorney Fuoco to return the identifiable fund to his trust account with the remainder of the disputed fund. Altogether, the Plan has shown an irreparable harm will occur if a TRO and preliminary

7

injunction are not issued prior to resolution of its equitable claim under § 502(a)(3).

### 3. Lack of a legal remedy

The Plan has no potential legal remedy. ERISA § 502(a)(3) allows only for "appropriate equitable relief." 29 U.S.C. § 1132(a)(3) (2007). The United States Supreme Court has ruled clearly that § 502(a)(3) provides only for an equitable right of action and not a legal one. *See Sereboff*, --- U.S. ---, 126 S. Ct. 1869, 1875-77; *Knudson*, 534 U.S. at 213, 215-16.

Here, the Plan has asserted a claim under § 502(a)(3). Since the only remedy available under that statute is equitable, the Plan has no available legal remedy. Consequently, the Plan has sufficiently shown the lack of a legal remedy.

### 4. Balance of harms among the Parties

Consideration of potential harms to the Parties weighs in favor of granting a TRO and preliminary injunction. The Plan's § 502(a)(3) claims with respect to the $2,529.66 will become moot if Attorney Fuoco is permitted to dissipate those funds. On the other hand, Attorney Fuoco will suffer no injury if required to transfer the $2,529.66 from his account back to the trust account. The funds' placement in the trust account will simply maintain the status quo until resolution of the matter. Consequently, the balance of the Parties' potential harms weighs in favor of granting a TRO and preliminary injunction.

### 5. Public Policy

Public policy supports granting the TRO and preliminary injunction. Illinois Rule of Professional Conduct 1.15(c) states:

> When in the course of representation a lawyer is in possession of property in which both the lawyer and another person claim interests, the property shall be kept separate by the lawyer until there is an accounting and

> severance of their interests. If a dispute arises concerning
> their respective interests, the portion in dispute shall be
> kept separate by the lawyer until the dispute is resolved.

ILL. R. PROF'L CONDUCT 1.15(c).

Here, the Plan, Defendant Theresa Maretta, and Defendant Attorney Fuoco all claim some right to the disputed $14,401.38 of the settlement fund. By transferring $2,529.66 of this disputed fund to his personal account prior to resolution, Attorney Fuoco has already committed a clear violation of Rule 1.15(c). Given that Rule 1.15(c) prohibits such transfers of disputed funds, public policy weighs clearly in favor of issuing a preliminary injunction to remedy and prevent improper transfer of the disputed fund.

Additionally, without the assurance that the Plan may recover benefits paid to participants where a recovery is made from a third party, the stability of many plans would be substantially compromised and could cause some companies to discontinue or greatly scale back the scope of the benefits provided in such circumstances. *See Cutting v. Jerome Foods, Inc.*, 993 F.2d 1293 (7th Cir. 1993) and *Admin. Comm. of the Wal-Mart Assocs. Health and Welfare Plan v. Willard,* 393 F.3d 1119 (10th Cir. 2004). Millions of employees rely on these benefits, and such reliance would be hampered if injunctions are not granted in situations such as this one. Consequently, this public policy factor weighs in favor of granting a TRO and preliminary injunction.

## B. An injunction may issue under ERISA § 502(a)(3)(A) regardless of whether irreparable harm is shown

ERISA's civil enforcement provision[1] expressly provides participants,

---

[1]     29 U.S.C. § 1132(a)(3)(A) provides that, "(b) Persons empowered to bring a civil action. A civil action may be brought - (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan . . ."

beneficiaries, and fiduciaries with the power to obtain an injunction, and so the Plan is not required to establish the traditional elements under Rule 65 to obtain such preliminary relief.

In *Burlington Northern Railroad Company v. Blair*, 957 F.2d 599 (8th Cir. 1992), the Eighth Circuit held that where, as here, a plaintiff seeks an injunction to prevent the violation of a federal statute that specifically provides for injunctive relief, the standard requirements for equitable relief need not be satisfied. *Blair*, 957 F.2d at 603. The Court reasoned as follows:

> It is a well-established rule that where Congress expressly provides for injunctive relief to prevent violations of a statute, a plaintiff does not need to demonstrate irreparable harm to secure an injunction. In such situations, it is not the role of the courts to balance the equities between the parties. The controlling issue is whether Congress has already balanced the equities and has determined that, as a matter of public policy, an injunction should issue where the defendant is engaged in, or is about to engage in, any activity which the statute prohibits. The proper role of the courts is simply to determine whether a violation of the statute has or is about to occur.

*Id.* at 601-02 (citations omitted). *See also Trailer Train Co. v. State Bd. of Equalization*, 697 F.2d 860 (9th Cir. 1983); *Atchison, Topeka and Santa Fe Railway v. Lennen*, 640 F.2d 255, 259-61 (10th Cir. 1981); *United States v. City and County of San Francisco*, 310 U.S. 16, 30-31 (1940); *Curtis 1000, Inc. v. Youngblade*, 878 F. Supp. 1224, 1246 (N.D. Iowa 1995). At least one court has applied this same reasoning to ERISA and concluded no irreparable harm need be shown given ERISA's statutory injunction provision. *See Heat & Cold Insulation Contractors v. Local 32*, 127 L.R.R.M. 2565 (D.C.N.J. 1997)(noting LMRA and ERISA do not require irreparable harm be shown but

10

rather presumes the possibility of irreparable harm exists).

Here, 29 U.S.C. § 1132(a)(3)(A) specifically authorizes suit by a participant, beneficiary, or fiduciary "to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan." *See* 29 U.S.C. § 1132(a)(3). Not only does Teresa Todd's Affidavit establish that Defendants are violating the Plan terms, but also Attorney Fuoco has violated the Plan's terms by collecting attorney's fees from the $14,401.38 of the settlement fund to which the Plan is entitled.

## CONCLUSION

Based on the foregoing, this Court should grant the Plan's motion for a temporary restraining order, and after notice and a hearing on this matter, this Court should issue a preliminary injunction enjoining Defendants from disbursing or otherwise dissipating the disputed fund. Further, the Court should freeze Attorney Fuoco's account(s) into which he transferred $6,789.41 and direct Attorney Fuoco to transfer $2,529.66 into the trust account until resolution of this dispute.

Dated: August 22, 2007

By: s/ Edwin L. Rawson
    Thomas H. Lawrence (TN 17105)
    Edwin L. Rawson (TN 020951)
    Malcolm B. Futhey III
    (TN 024432; IL 6281425)*
    LAWRENCE & RUSSELL, LLP
    5050 Poplar Avenue, Suite 1717
    Memphis, Tennessee  38157
    Telephone:  (901) 844-4430
    Facsimile:  (901) 844-4435

    Attorneys for Plaintiff

*Pro Hac Vice Application submitted.

## CERTIFICATE OF SERVICE

I hereby certify that I have this 22nd of August, 2007, served a copy of the foregoing document, with any attachments, upon all counsel of record by electronic filing in accordance with the Court's guidelines to those counsel who are registered, listed below, with the Court's electronic filing program, and by properly addressed first class mail.

Steven C. Fuoco, Esq.
1055 Golf Ave.
Highland Park, IL 60035

# EXHIBT A

# RELEASE OF CLAIMS (MARK W. LEWIS ONLY)

KNOW ALL MEN BY THESE PRESENTS

That Teresa Maretta, being of lawful age, for the sole and total consideration of Twenty Thousand Dollars and Zero Cents ($20,000.00), with Eighteen Thousand, Six Hundred Sixty One and 13/100 Dollars ($18,661.13) to the undersigned in hand paid, receipt whereof is hereby acknowledged and One Thousand, Three Hundred Thirty Eight and 87/100 Dollars ($1,338.87) paid to Liberty Mutual Fire Insurance Company as Subrogee of the Undersigned, does hereby and for her heirs, executors, administrators, successors and assigns, release, acquit and forever discharge ONLY Mark W. Lewis and his agents, servants, successors, heirs, executors, administrators from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever against MARK W. LEWIS ONLY which the Teresa Maretta now has or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty, or event which occurred on or about the 16th day of December, 2003 at or near Roosevelt and Harlem, City of Oak Park, County of Cook, State of Illinois that is the subject matter of Docket Number 2005 L 7102, TERESA MARETTA v. MARK W. LEWIS filed in the Cook County, Illinois Circuit Court, Law Division.

It is understood that Teresa Maretta does not in any way intend to release and does hereby expressly reserve in this Instrument any and all claims for underinsured motorist insurance benefits made to her automobile liability insurer, Liberty Mutual for her bodily injuries resulting or to result from the same accident, casualty, or event which occurred on or about the 16th day of December, 2003 at or near Roosevelt and Harlem, City of Oak Park, County of Cook, State of Illinois.

It is understood and agreed that this settlement with Mark W. Lewis ONLY is the compromise of a doubtful and disputed claim, and that the payment made is not to be construed as an admission of liability on the part of the party and his agents, servants, successors, heirs, executors, administrators hereby released and that said releases deny liability therefor and intend merely to avoid litigation and buy their peace.

The undersigned hereby declares and represents that the injuries sustained are or may be permanent and progressive and that recovery therefrom is uncertain and indefinite and in making this Release it is understood and agreed that the undersigned relies wholly upon the undersigned's judgment, belief and knowledge of the nature, extent, effect and duration of said injuries and liability therefor and is made without reliance upon any statement or representation of the party hereby released or her representative or by any physician or surgeon she employed.

The undersigned further declares and represents that no promise, inducement, or agreement not herein expressed has been made to the undersigned and that this Release contains the entire agreement between the parties hereto and that the terms of the Release are contractual and not a mere recital.

_Theresa Maretta_
THERESA MARETTA

_[signature]_
WITNESS

## 1-109 CERTIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she believes the same to be true.

_7-20-07_

Date

_Theresa Maretta_

TERESA MARETTA

# EXHIBT B

TERESA MARETTA and RICHARD )
MARETTA )
                        )
          Plaintiffs, )
v. )    Case No. 05 L 7102
                        )
MARK LEWIS )
                        )
          Defendant, )

## PETITION TO ADJUDICATE ASSERTED MEDICAL PAYMENT LIENS

Plaintiff, TERESA MARETTA and her attorney, STEVEN C. FUOCO move the Court to hear and adjudicate the purported medical payment lien claims asserted by La Grange Memorial Hospital and Wal-Mart Associates' Health and Welfare Plan through claim administrators, Blue Cross and Blue Shield of Illinois, a division of Health Care Services Corporation and Benefit Recovery, Inc. and, in support thereof, states as follows:

1.    This action sought money damages recovery for bodily injury caused by the defendant to plaintiffs on December 16, 2003 from a rear-end auto collision.

2.    Case discovery revealed that defendant only had auto liability insurance of $20,000 per plaintiff and $40,000 per occurrence.

3.    Plaintiff, TERESA MARETTA reached a policy limits settlement agreement with defendant's insurer, Affirmative Insurance on July 5, 2007.

4.    The gross settlement recovery to TERESA is only $18,661.13 because of a pre-suit subrogation payment made by Affirmative of $1,338.87 to plaintiff's auto insurer, Liberty Mutual for medical payments coverage benefits Liberty Mutual paid on plaintiff's behalf.

5.    During the two year pendency of this action, plaintiffs' counsel received three purported claims for medical payments reimbursement by La Grange Memorial Hospital and by

1

Wal-Mart Associates' Health and Welfare Plan through claim administrators, Blue Cross and Blue Shield of Illinois, a division of Health Care Services Corporation and Benefit Recovery, Inc. (See purported claim correspondence from each, attached as Exhibits A, B and C respectively). TERESA is employed at Sam's Club in Bedford Park and is a Plan participant.

6. TERESA contests the entire La Grange Memorial Hospital lien claim of \$2,786.48, pursuant to Second District Appellate Court holdings in *Lopez v. Morley, 352 Ill. App. 3d 1174 (2nd Dist. 2004)* and *N.C. v. A.W., 305 Ill. App. 3d 773 (2nd Dist. 1999)*. In both opinions, the Court held that any debt for hospital care costs had been extinguished by the hospital lien claimant's acceptance of reimbursement at lower, negotiated contract rates by a health care plan. *Lopez, 352 Ill. App. 3d at 1181-82* and *N.C., 305 Ill. App. 3d at 775*.

7. There can be no dispute from the billing statement copies made part of La Grange Memorial Hospital's purported hospital lien (attached Exhibit A) that La Grange did receive reimbursement payments at a reduced rate paid by Blue Cross and Blue Shield of Illinois for hospital services provided to TERESA and seeks a higher rate, unpaid balance by asserted hospital lien.

8. Therefore, the Court should find that any purported hospital lien has been extinguished by the reduced rate reimbursement payments accepted from Blue Cross and Blue Shield of Illinois unless La Grange Memorial Hospital can make a sufficient evidentiary showing by the terms of the contract between the hospital and the Wal-Mart Associates' Health and Welfare Plan and/or the claim administrator, Blue Cross and Blue Shield of Illinois that a Plan participant expressly remains liable for hospital charges in excess of the negotiated contract reimbursement rate. As the lien claimant, the hospital has the legal burden to show the validity of the hospital lien asserted and to precisely quantify the claimed amount owed.

2

9.     Exhibits B and C reveal two different entities, Blue Cross and Blue Shield of Illinois and Benefit Recovery, Inc. both purporting to act on behalf of Wal-Mart Associates' Health and Welfare Plan.

10.     Exhibit B sent by Blue Cross and Blue Shield of Illinois fails to state an amount claimed or attach any billing statement as proof.

11.     Exhibit C sent by Benefits Recovery, Inc. states an amount of $22,995.37 but fails to differentiate between TERESA and co-plaintiff, RICHARD MARETTA, also fails to attach any billing statement as proof and cites an "incident date" of July 6, 2006, more than two and one-half years after the December 16, 2003 collision at issue.

12.     As a claimant, Wal-Mart Associates' Health and Welfare Plan or a third party agent truly authorized to act on its behalf in this proceeding must appear and justify the claim asserted with a sufficient evidentiary showing.

13.     There is no dispute of fact that TERESA had been subsequently injured at work on May 12, 2005 after being hit by a handcart from behind. This work place injury is the subject matter of 06 WC 016142, now pending in the Workers Compensation Commission.

14.     Since the Wal-Mart Associates' Health and Welfare Plan has undoubtedly made medical care payments stemming from the May 12, 2005 work injury, any reimbursement claim the Plan asserts against TERESA's settlement proceeds here should be scrutinized by the Court for sufficient evidentiary proof of a causal connection between every treatment charge the Plan seeks reimbursement with the December 16, 2003 collision and not the May 12, 2005 work injury.

15.     Such evidentiary proof of causal connection is required in a physician or hospital lien adjudication proceeding. *See Anderson v. Ill. Dept. of Mental Health and Develop. Disab.,*

3

*305 Ill. App. 3d 262, 266 (1st Dist. 1999)(hospital lien)* and *Dollieslager v. Hurst, 295 Ill. App. 3d 152, 156-57 (3rd Dist. 1998)(physician's lien).*

16. The Court should apply the very same evidentiary requirement to contractual rights of subrogation since contractual subrogation and reimbursement rights exist only when a third party causes a Plan participant injury and the need for health care treatment, for which the Plan paid the cost.

17. Additionally, any reimbursement total that the Plan has sufficiently proven to be casually related to the December 16, 2003 collision and resultant injury to TERESA must be reduced by the application of the Common Fund Doctrine, as a matter of law.

18. The Illinois Supreme Court held in *Bishop v. Burgard, 198 Ill. 2d 495, 510 (2002)* that the Common Fund Doctrine is properly applied to reduce reimbursement owed a Plan administrator from a bodily injury lawsuit settlement fund by a contingent 1/3 attorney fee and pro rata share of litigation costs. Interestingly, both the Wal-Mart Associates' Health and Welfare Plan and Blue Cross and Blue Shield of Illinois appeared in *Bishop* and argued that ERISA based preemption prohibited state court lien adjudication and prevented application of the Common Fund Doctrine. *198 Ill. 2d at 498.* The Court rejected both arguments, finding that a claim premised upon the Common Fund Doctrine is an independent action, based upon an attorney's rights that are wholly unrelated to the Plan itself and do not fit the criteria for complete preemption by ERISA. *198 Ill. 2d at 507.*

19. Last, the Court should order the immediate endorsement of the Affirmative Insurance settlement proceeds draft by any purported lien holders listed as a co-payee, with the net settlement proceeds after the deduction of a 1/3 contingency attorney fee and advanced case expenses to be held in the plaintiffs' counsel's client trust account at the First Bank of Highland

4

Park until entry of the Court's final Order adjudicating all purported medical payment liens after hearing.

20.    The plaintiffs' counsel's right to immediate payment of this contingent fee and reimbursement of advanced case expenses cannot be disputed in good faith. Any delay associated with adjudication of purported medical payment liens asserted are prejudicial to the plaintiffs' counsel's right to be timely paid for successful service rendered to TERESA.

Respectfully submitted,

Steven C. Fuoco
Counsel for Plaintiffs

Steven C. Fuoco
1055 Golf Avenue
Highland Park, IL 60035
847/432-LAWS (5297)
Court ID No. 42887

Claim #1052963

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

TERESA MARETTA and RICHARD )
MARETTA )
)
       Plaintiffs, )
)    Case No. 05 L 7102
v. )
)
MARK LEWIS )
)
       Defendant; )

AUG - 7 2007

FILED
2007 AUG -2 PM 2:47
DOROTHY BROWN
CLERK OF CIRCUIT COURT
LAW DIVISION

## NOTICE OF HEARING

TO:    See attached service list

**Please take notice** that on the **17th** of August, 2007 at **9:30 #3** a.m. I will appear before the Honorable Kathy M. Flanagan or any Judge sitting in her stead in Courtroom 2210 of the Richard J. Daley Center, 50 West Washington Street, Chicago, Illinois and then and there present **PETITION TO ADJUDICATE ASSERTED MEDICAL PAYMENT LIENS**, a copy of which is hereby served.

Steven C. Fuoco
1055 Golf Avenue
Highland Park, IL 60035
847/432-LAWS (5297)
Court ID No. 42887
Counsel for Plaintiffs

## PROOF OF SERVICE

    I, Steven C. Fuoco, an attorney certify that I served a copy of this Notice by certified mail delivery, return receipt requested to the corporate entities on the attached service list and by first class mail to counsel for defendant, Mark W. Lewis, all at their respective addresses and depositing the same in the U.S. Mail at the United States Post Office, 832 Central Avenue, Highland Park, Illinois before 5:00 p.m. on August 1, 2007.

[X]    Under penalties as provided by law pursuant to 735 ILCS 5/1-109, I certify that the information set forth herein is true and correct.

Maretta v. Lewis
Service List

Mark A. Mordini
Mordini & Schwartz, P.C.
188 W. Randolph Street, Suite 300
Chicago, IL 60601
For Defendant, Mark W. Lewis

Adventist LaGrange Memorial Hospital
5101 Willow Springs Road
LaGrange, Illinois 60525
Attn: Patient Accounts/Legal
Acct. No. 1162147
**Certified Mail Article**
**700627600000267344000**

Blue Cross and Blue Shield of Illinois
2329 South MacArthur Boulevard
Springfield, Illinois 62704-4503
Attn: Corporate Reimbursement/Subrogation
Case Number 04111L0005490
**Certified Mail Article**
**700627600000267343997**

Benefit Recovery, Inc.
665 Oakleaf Office Lane
2nd Floor
Memphis, TN 38117
Attn: Win Rawson, General Counsel
BRI Case No. 1052963
**Certified Mail Article**
**70062760000026734017**

# EXHIBT C

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

| | |
|---|---|
| TERESA MARETTA and RICHARD MARETTA )<br><br>Plaintiffs, )<br><br>v. )<br><br>MARK LEWIS )<br><br>Defendant, ) | Case No. 05 L 7102 |

## AFFIDAVIT OF STEVEN C. FUOCO

I, Steven C. Fuoco, on oath hereby depose and state as if called to testify as a witness in court:

1.  My name is Steven C. Fuoco. I am over the age of eighteen and have never been adjudged incompetent to conduct my own affairs.
2.  I have been retained as counsel for plaintiffs, Teresa Maretta and Richard Maretta in the above captioned action.
3.  I am a 1991 licensure in the State of Illinois bar, am a member of the Northern District Trial Bar, Central District general bar and have been admitted as pro hac vice counsel in Saline County, Nebraska.
4.  My representation agreement with the plaintiffs is for a 33 1/3 contingency attorney fee and case expense reimbursement from any client recovery.
5.  For Teresa Maretta's settlement with defendant of $18,661.13, the contingency attorney earned is $6,220.37.
5.  Attached as Exhibit A is a true and correct copy of the case expense ledger of costs advanced for the prosecution of Teresa Maretta's claim (ledger $922.88/2 = 461.44)
6.  The total costs amount is $569.04. The total amount of my fee and costs is $6,789.41.

**Further affiant sayeth not**

## VERIFICATION PURSUANT TO §1-109

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be based upon information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes to be true

16 August 2007
_____
Date

_____
Steven C. Fuoco

DATE: 06/22/06 14:43:35

PROFORMA STATEMENT BILL THROUGH DATE 06/22/06

FOR FILE 3001349

PROFORMA #   62086

*------COST ENTRIES------------------------------------*

| INDEX | ATTY | DATE | STAT | AMOUNT | DESCRIPTION | E-CODE | QUANTITY | RATE |
|---|---|---|---|---|---|---|---|---|
| 2184962 | 9114 | 06/28/05 | H | 3.60 | Photocopying Expense<br>Voucher Index: 1015051 | | 24 | .15 |
| 2184963 | 9114 | 06/28/05 | H | 1.35 | Photocopying Expense<br>Voucher Index: | | 9 | .15 |
| 2167400 | 2105 | 06/28/05 | H | 24.60 | Service of Summons by Sheriff Filed<br>summons for Mark Lewis<br>Voucher Index: 1012480 | | 1 | 24.60 |
| 2167399 | 2105 | 06/28/05 | H | 504.00 | Complaint fee Filed new complaint for<br>pltfs<br>Voucher Index: 1012479 | | 1 | 504.00 |
| 2208842 | 2105 | 08/12/05 | H | 13.63 | Lexis Research for the month of August,<br>2005<br>Voucher Index: 1016480 | | 1 | 13.63 |
| 2208843 | 4032 | 08/26/05 | H | 35.21 | Lexis Research for the month of August,<br>2005<br>Voucher Index: 1016480 | | 1 | 35.21 |
| 2208811 | 2105 | 08/31/05 | H | 26.00 | Lexis Research for the month of August,<br>2005<br>Voucher Index: 1016480 | | 1 | 26.00 |
| 2211637 | 9011 | 09/30/05 | H | .30 | Photocopying Expense<br>Voucher Index: | | 2 | .15 |
| 2211638 | 9011 | 09/30/05 | H | .15 | Photocopying Expense<br>Voucher Index: | | 1 | .15 |
| 2292470 | 2105 | 01/05/06 | B | 117.50 | Record Copy Service - Sam's Club,<br>Bentonville, AR re: Theresa Maretta<br>Voucher Index: 1026005 | | 1 | 117.50 |
| 2275495 | 8003 | 03/14/06 | B | 39.90 | Photocopying Expense<br>Voucher Index: | | 266 | .15 |
| 2316895 | 9114 | 03/14/06 | B | 1.20 | Photocopying Expense<br>Voucher Index: | | 8 | .15 |
| 2316896 | 9114 | 03/15/06 | B | 1.20 | Photocopying Expense<br>Voucher Index: | | 8 | .15 |
| 2289849 | 8000 | 04/17/06 | B | 48.45 | Photocopying Expense | | 323 | .15 |

Ex. A

DATE: 06/22/06 14:43:35

PROFORMA STATEMENT BILL THROUGH DATE 06/22/06          FOR FILE 3001349          PROFORMA #    62086

*------COST ENTRIES------------------------------------------*

| INDEX | ATTY | DATE | STAT | AMOUNT | DESCRIPTION | E-CODE | QUANTITY | RATE |
|-------|------|------|------|--------|-------------|--------|----------|------|
| 2289850 | 8000 | 04/17/06 | B | 10.20 | Photocopying Expense Voucher Index: | | 68 | .15 |
| 2296215 | 8000 | 04/21/06 | B | 21.00 | Photocopying Expense Voucher Index: | | 140 | .15 |
| 2303044 | 9114 | 05/10/06 | B | 7.65 | Photocopying Expense Voucher Index: | | 51 | .15 |
| 2312962 | 2105 | 05/16/06 | B | 55.80 | Pitney Bowes Copy Service - Heavy Litigation Voucher Index: 1027936 | | 1 | 55.80 |
| 2316897 | 9114 | 06/01/06 | B | .45 | Photocopying Expense Voucher Index: | | 3 | .15 |

COST SUBTOTAL                          922.88

*------COST CODE SUMMARY-----------------------------*

| COST CODE | | AMOUNT |
|-----------|---|--------|
| 001 | Photocopying Expense | 135.45 |
| 054 | Complaint Fee | 504.00 |
| 059 | Service of Summons by Sheriff | 24.60 |
| 078 | Record Copy Service | 117.50 |
| 094 | Pitney Bowes Copy Service | 55.80 |
| 096 | Lexis Research | 85.53 |



# RECORD COPY SERVICES

THIRTY NORTH LA SALLE   CHICAGO ILLINOIS 60602   312-726-6650

PARALEGAL SERVICES

**INVOICE NUMBER**

J   21139

PLEASE INCLUDE
INVOICE NUMBER OR
COPY OF INVOICE WITH
PAYMENT TO INSURE
PROPER CREDITING

38333-120753

ORDERED BY   :   MR. STEVEN C. FUOCO

SOLD TO   **STEVEN C. FUOCO**
**ATTORNEY AT LAW**
1055 GOLF AVE.
HIGHLAND PARK, IL 60035

CW

FED. I.D. # 36-2422575

| DATE | COURT NO. | FILE NO. | CLAIM NO | RCS REF. |
|---|---|---|---|---|
| 3/23/07 | 05 L 7102 | | | 02087073 |
| | | | | 21139-38333 |

TYPE OF RECORD
OR DOCUMENT   :   WEST SUBURBAN NEUROSURGICAL ASSOCIATES
HINSDALE, IL

NAME OF CASE   :   RE: THERESA MARETTA
THERESA MARETTA, ET AL.
VS. LEWIS

COMMENTS   :

| CODE | AMOUNT |
|---|---|
| C | 33.60 |

**TOTAL**   33.60

**THANK YOU**

AUTHORIZATION SERVICES
A. AUTHORIZATION SERVICES
B. SPECIAL SERVICES
C. COPIES
D. SUBPOENA SERVICES
E. EXPEDITED SERVICES

F. FEDERAL EXPRESS
G. SPECIAL PICKUP/DELIVERY
H. NON COMPLIANCE
J. BLUEPRINTS/OVERSIZE
K. COLOR COPIES

L. LOCATION COPYING
M. MICROFILM COPIES
N. NO RECORDS
P. PHOTOGRAPHS
Q. CANCELLED

R. SEARCH
S. SUBPOENA FEE
T. TRANSPORTATION
U. COURT EXHIBITS
V. VIDEO CASSETTE

W. AUDIO CASSETTE
X. X-RAY SERVICES
Y. DIGITAL SERVICES
Z. DISK COPYING
*. SEE COMMENTS

CUSTOMER COPY



# RECORD COPY SERVICES

THIRTY NORTH LA SALLE · CHICAGO ILLINOIS 60602 · 312-726-6650

PARA LEGAL SERVICES

QC

INVOICE NUMBER

H 27473

3B333-120753

ORDERED BY : MR. STEVEN C. FUOCO

SOLD TO : STEVEN C. FUOCO
ATTORNEY AT LAW
1055 GOLF AVE.
HIGHLAND PARK, IL 60035

RETAIN FOR YOUR FILE.

| | | APPROVED |
| | | DATE PAID |
| | | CHECK # |

FED. I.D. # 36-2425575

| DATE | COURT NO. | FILE NO. | CLAIM NO. | RCS REF. |
|---|---|---|---|---|
| 8/17/06 | 05 L 7102 | | | 07106343 |
| | | | | 27473-38333 |

TYPE OF RECORD
OR DOCUMENT : DR. VINCENZO BARTOLOMEO
FAMILY MEDICAL GROUP OF LA GRANGE PARK
LA GRANGE, IL

NAME OF CASE : RE: THERESA MARETTA
MARETTA, ET AL.
VS. LEWIS

COMMENTS :

| CODE | AMOUNT |
|---|---|
| C | 40.40 |

TOTAL 40.40

THANK YOU

A. AUTHORIZATION SERVICES
B. SPECIAL SERVICES
C. COPIES
D. SUBPOENA SERVICES
E. EXPEDITED SERVICES

F. FEDERAL EXPRESS
G. SPECIAL PICKUPDELIVERY
H. NON COMPLIANCE
J. BLUEPRINTS/OVERSIZE
K. COLOR COPIES

L. LOCATION COPYING
M. MICROFILM COPIES
N. NO RECORDS
P. PHOTOGRAPHS
Q. CANCELLED

R. SEARCH FEE
S. SUBPOENA FEE
T. TRANSPORTATION
U. COURT EXHIBITS
V. VIDEO CASSETTE

W. AUDIO CASSETTE
X. X-RAY SERVICES
Y. DIGITAL SERVICES
Z. DISK COPYING
*. SEE COMMENTS



CUSTOMER COPY

# RECORD COPY SERVICES

THIRTY NORTH LA SALLE   CHICAGO ILLINOIS 60602   312-726-6650
PARA LEGAL SERVICES

INVOICE NUMBER

H 27533

QC

38333-120753

ORDERED BY
SOLD TO

MR. STEVEN C. FUOCO
**STEVEN C. FUOCO**
**ATTORNEY AT LAW**
1055 GOLF AVE.
HIGHLAND PARK, IL 60035

FED.I.D. # 36-2422575

RETAIN FOR YOUR FILE

| | |
|---|---|
| APPROVED | |
| DATE PAID | |
| CHECK # | |

| DATE | COURT NO. | FILE NO. | CLAIM NO. | RCS REF. |
|---|---|---|---|---|
| 8/17/06 | 05 L 7102 | | | 07106343 27533-38333 |

TYPE OF RECORD
OR DOCUMENT      : ADVENTIST LA GRANGE MEMORIAL HOSPITAL
                   LA GRANGE, IL

NAME OF CASE     : RE: THERESA MARETTA
                   MARETTA, ET AL.
                   VS.LEWIS

COMMENTS         :

| | CODE | AMOUNT |
|---|---|---|
| | C | 33.60 |

| TOTAL | 33.60 |
|---|---|

THANK YOU

A. AUTHORIZATION SERVICES
B. SPECIAL SERVICES
C. COPIES
D. SUBPOENA SERVICES
E. EXPEDITED SERVICES

F. FEDERAL EXPRESS
G. SPECIAL PICKUP/DELIVERY
H. NON COMPLIANCE
I. BLUE PRINTS/OVERSIZE
K. COLOR COPIES

L. LOCATION COPYING
M. MICROFILM COPIES
N. NO RECORDS
P. PHOTOGRAPHS
Q. CANCELLED

R. SEARCH
S. SUBPOENA FEE
T. TRANSPORTATION
U. COURT EXHIBITS
V. VIDEO CASSETTE

W. AUDIO CASSETTE
X. X-RAY SERVICES
Y. DIGITAL SERVICES
Z. DISK COPYING
*. SEE COMMENTS

# EXHIBT D

# Malcolm Futhey

Dear Steven,

This is to confirm that today you provided me with the following:

1)  Affidavit of Steven C. Fuoco with 5 pages of attachments;
2)  Release of Claims; and
3)  Plaintiff Theresa Maretta's Answers to Defendant's Interrogatories (unsigned and undated).

We agreed also (1) that you would provide copies of responses to requests for production concerning Theresa and the name and number of the stenographer for Theresa's deposition, and (2) that I would provide an itemization of Theresa's medicals.

As to the $18,661.113 settlement fund, you indicated that today you would place your purported attorney's fees and costs of $6789.41 in your personal or operating account and place $11,871.72 into a trust account pending resolution of our dispute. You indicated you would seek an addition 1/3 from the $11,871.72. I responded that the Wal-Mart Plan sought $14,000.00+ for paid medical benefits without reduction for your attorney's fees. I requested that you put the entire disputed amount of $14,000.00+ into the trust account pursuant to Ethics Rule 1.15.

To clarify now, the Plan seeks reimbursement for $14,401.38 in paid benefits. Further, the Plan language preempts the common fund doctrine and prohibits you from taking any fees from the $14,401.38. See Harris v. Harvard Pilgrim, 208 F.3d 274 (1st Cir. 2000); Ryan v. Fed Ex, 78 F.3d 123 (3d Cir. 1996); United McGill Corp. v. Stinnett, 154 F.3d 168 (4th cir. 1998); Walker v. Wal-Mart Stores, Inc., 159 F.3d 938 (5th Cir. 1998); Health Cost Controls v. Isbell, 139 F.3d 1070 (6th Cir. 1997); Waller v. Hormel Foods, Inc, 120, F.3d 138 (8th Cir. 1997). Every federal circuit court that has addressed the issue has found an ERISA plan's language can preempt the common fund doctrine. The Illinois Supreme Court decided this federal issue wrongly in Bishop v. Burgard. This issue should be readdressed by the IL Supreme Court or taken up by the US Supreme Court.

Again, I request that you put the entire disputed amount of $14,401.38 into the trust account pursuant to Ethics Rule 1.15(c) until this dispute is resolved.

Also, I believe you should revisit your math concerning your position that you are entitled to an additional 1/3 from the $11,871.72. If you did obtain this amount you would have obtained a total fee of $10,000.00+ or 54% against an $18,661.13 settlement fund. No court would award such a fee.

Additionally, I ask that you provide a copy of Theresa's signature page for her response to the interrogatories with a signature and date.

Please let me know if you have any further questions.

Sincerely,

Malcolm B. Futhey III